IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DEBRA ANN SIMPSON, | |
| Plaintiff, | Civ. No. 6:14-cv-01492-MC |
| v. | OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

MCSHANE, Judge:

Plaintiff Debra Ann Simpson brings this action for judicial review of the Commissioner's decision denying her application for benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On November 14, 2011, Simpson filed an application for disability insurance benefits and supplemental security income benefits. Following a hearing, the administrative law judge (ALJ) determined Simpson is not disabled. TR 27-37.[1] Simpson argues that the ALJ erred by: (1) finding her not credible; (2) failing to credit the opinion of examining physician Dr. Raymond Nolan; (3) failing to credit the limitations identified by a physical therapist; (4) failing to credit the lay evidence; (5) failing to include Simpson's mental impairments at steps two and four; and

---

[1] "TR" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

(6) finding Simpson could perform past work. For the reasons stated below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his

burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520.

At step two, the ALJ found that Simpson suffers from severe impairments of bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, bilateral foot osteoarthritis, degenerative joint disease of the left knee, left eye macular degeneration wet, and right eye macular degeneration dry. TR 19-30. At the hearing, Simpson testified that it is mostly the pain in her neck, back, and shoulders that prevents her from working. TR 57.

In assessing Simpson's RFC, the ALJ concluded Simpson could perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). TR 32. Specifically, the ALJ determined Simpson could lift ten pounds frequently and twenty pounds occasionally, but could not climb ladders, ropes or scaffold. The ALJ limited Simpson to occasionally balance, stoop, kneel, crouch, or crawl, with occasional bilateral overhead reaching, frequent bilateral reaching in other directions, and frequent bilateral handling. Simpson cannot drive at night and must avoid moderate exposure to operational control of moving machinery, hazardous machinery, and unprotected heights. Finally, the ALJ concluded Simpson is limited to occupations requiring frequent near acuity. TR 32-33. At step four, the ALJ determined Simpson could perform past relevant work as a fundraiser. TR 36. Thus, the ALJ concluded Simspon was not disabled. *Id*.

As noted, Simpson argues the ALJ made multiple errors requiring remand. I discuss each alleged error in turn.

## 1. The ALJ's Adverse Credibility Determination

In making an adverse credibility determination regarding Simpson's subjective reporting on the severity of her symptoms, the ALJ was required to provide "specific, clear and convincing

3 – OPINION AND ORDER

reasons" for rejecting Simpson's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). The ALJ provided several such reasons.

The ALJ noted that despite alleging disability as of February 8, 2010, Simpson performed substantial gainful activity in August through October of that year. TR 29, 35. No evidence suggested Simpson quit that job due to her limitations. Instead, she left due to stress and disapproval of the way others treated her. TR 29, 53-54, 67. As I have previously concluded, the fact a claimant performs substantial gainful activity after the alleged onset date is, on its own, a clear and convincing reason for finding the claimant not fully credible as to the extent of her limitations. *Gartzke v. Colvin*, 2015 WL 5178709 at *7 n.7 (D. Or.).[2]

The ALJ pointed to other valid reasons for finding Simpson not credible. For example, the ALJ concluded Simpson's activities of daily living did not align with her complaints of pain. Simpson testified that the pain in her shoulders prevents her from simply reaching across a table or picking something up. TR 56. The ALJ pointed to the fact that Simpson drives, prepares her own meals on a daily basis, performs light yard work, and does chores such as sweeping, laundry, and dishes. TR 34-35. Simpson's sister noted Simpson performed 2-3 hours of household chores, such as mopping and hand weeding, per day. TR 324. The ALJ did not err in concluding Simpson's daily activities contradicted her subjective reporting of her limitations. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

The ALJ also pointed to medical records showing Simpson displayed good range of motion and had normal gait and muscle tone. TR 34. Despite Simpson's claims that she cannot

---

[2] As noted by the ALJ, there is no evidence or argument that Simpson's 2010 fundraising job was a mere unsuccessful trial work period. TR 29; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (discussing fact that trial work periods will not adversely affect a claim of disability).

4 – OPINION AND ORDER

reach across a table, multiple records indicate Simpson had full range of motion in her upper extremities. In September 2011, Simpson's physical therapist noted Simpson had full range of motion in her upper extremities and "did not report any discomfort with repetitive arm use." TR 380. During a consultative examination in April 2012, Simpson had full range of motion. TR 452-53.

Finally, the ALJ noted that the objective medical evidence revealed mild to moderate degenerative changes. The objective findings are at odds with Simpson's self-reports of debilitating pain.

As in many social security cases, Simpson's case relies in large part on her credibility. The above reasons are sufficiently specific, demonstrating the ALJ did not arbitrarily discredit Simpson's testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for finding Simpson less-than credible.

## 2. Dr. Nolan's Opinion

Simpson argues the ALJ erred in failing to fully credit the opinion of Dr. Nolan. Dr. Nolan examined Simpson on April 7, 2012. Dr. Nolan noted Simpson had a normal gait and could transfer from sitting to standing without difficulty. TR 452. Simpson was able to walk on her toes and heels, and performed a normal squat rise maneuver, tandem, and Rombert. *Id.* Dr. Nolan observed Simpson had generally good range of motion. Simpson had normal muscle tone with no evidence of atrophy or fasciculation. TR 453.

Dr. Nolan diagnosed: bilateral knee pain, with nonspecific examination; bilateral carpal tunnel syndrome; probable early osteoarthritis of the hands; arthralgias wrists; and nonspecific left shoulder pain. TR 453.

The ALJ gave little weight to Dr. Nolan's opinion. Simspon argues the ALJ erred in failing to credit the following comment of Dr. Nolan: "She should be able to sit for at least six hours in an eight-hour day and stand and/or walk at least four hours in an eight-hour day." TR 453. The ALJ noted Dr. Nolan's exertional limitations were "somewhat consistent with the record[.]" TR 36. Of course that is simply another way of stating that Dr. Nolan's exertional limitations are somewhat inconsistent with the record.

"Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The state non-examining phsyicians concluded that rather than being able to stand and/or walk "at least four hours" in an eight-hour workday, Simpson could sit, stand, or walk six hours in an eight-hour workday. The ALJ gave those opinions substantial weight. TR 35. The ALJ concluded the non-examining opinions were consistent with the medical record as a whole.

The ALJ also noted that Dr. Nolan relied on Simspon's subjective reporting. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Substantial evidence supports the ALJ's conclusion. Despite noting

6 – OPINION AND ORDER

Simpson could transfer from sitting to standing without difficulty, had a normal gait, and performed a normal squat rise maneuver, TR 452, Dr. Nolan concluded Simpson should minimize squatting and kneeling and avoid climbing stairs. TR 453. While Dr. Nolan's opinion conflicts with his own observations during the examination, it matches with Simpson's subjective complaints that she "has difficulty squatting and kneeling and has to go up and down stairs sideways." TR 452. The discrepancy between Dr. Nolan's opinion and notes is a clear and convincing reason for the ALJ to disregard Dr. Nolan's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a physician's opinion if it conflicts with the physician's other findings)).

As discussed above, the ALJ assigned more weight to the opinions of the nonexamining physicians. Dr. Nolan's opined that Simpson "should be able . . . to stand and/or walk at least four hours in an eight-hour day." TR 453. Contrary to Simpson's argument, Dr. Nolan's opinion is not a specific limitation that Simpson could only stand and walk for four hours a day. To the extent that Dr. Nolan's opinion conflicted with those of the non-examining physicians, the ALJ's weighing of the conflicting evidence was supported by the record.

### 3. Physical Therapist Tom Zomerschoe's Opinion

Tom Zomerschoe, a physical therapist, examined Simpson in September 2011. Zomerschoe opined Simpson was essentially limited to sedentary work. Among other limitations, Zomerschoe concluded Simpson could stand and walk up to 30 minutes at a time for up to two hours per day. The ALJ gave some weight to Zomerschoe's opinion, but rejected his standing and walking limitations. The ALJ noted the 30 minutes at a time for two hours per day limitations were contradicted by the rest of the medical record and Simpson's activities of daily

7 – OPINION AND ORDER

living. Specifically, the ALJ stated, "the claimant's longitudinal treatment record indicated that the claimant had additional functional abilities in the area of standing and walking and kneeling or crawling based on her reported activities and the medical record as a whole." TR 35.

As a physical therapist, Zomerschoe's opinion is that of an "other source." § 404.1513(d); *Croft v. Comm'r of Soc. Sec.*, 2015 WL 1246245 at *4 (D. Or.). Therefore, the ALJ need only provide a germane reason for rejecting his opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ did not entirely disregard Zomerschoe's opinion. He simply concluded that other opinions in the record, from "acceptable medical sources" were entitled to more weight on the issue of how long Simpson could stand and walk each day.

The medical record as a whole supports the ALJ's conclusion that Zomerschoe's walking and standing limitations were too restrictive. Although Simpson complained of knee pain, objective tests of that knee revealed only minimal degenerative joint spacing with no osteophytosis. TR 439. Other testing on Simpson's knee revealed no acute issues, and revealed Simpson had full range of motion and strength in her knees. TR 425. In 2011, Simpson reported to the ER for chest pain and shortness of breath. Although dizziness prevented Simpson from walking much that day, she reported having "a good exercise capacity." TR 408. In December 2013, Simpson had no difficulty walking during an examination. TR 555. Similarly, objective medical evidence of plaintiff's back injuries revealed mild to moderate findings. TR 584.

The ALJ's conclusion that Zomerschoe's limitations and findings were inconsistent is also supported by the record. Zomerschoe observed Simpson to have full range of motion in her upper and lower extremities. TR 380. Although Simpson told Zomerschoe that she could not climb stairs, she "performed well with ambulation on both even and uneven terrain[.]" *Id.*

Despite Simpson's complaints of discomfort when kneeling or squatting, Zomerschoe noted Simpson "performed fairly well with all activities." TR 381.

The ALJ provided germane reasons for rejecting Zomerschoe's opinion that Simpson is limited to standing and walking two hours per workday.

**4. Jenne DeArmond's Third Party Function Report**

In August 2012, Simpson's sister Jenne DeArmond provided a third party function report. TR 322-29. DeArmond stated she and Simpson had "very little time spent together." TR 322. DeArmond stated Simpson could not work long hours on her feet. DeArmond stated Simpson performed 2-3 hours of household chores (laundry, hand weeding flower beds, dishes, sweeping) per day. TR 324. DeArmond stated Simpson lost interest in many of her hobbies and could spend no more than two hours on her feet, and could walk only 15 minutes before resting. TR 327.

An ALJ must take into account lay witness testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ did just that by giving DeArmond's opinion some weight as her comments regarding Simpson's ability to do light household chores were generally consistent with someone capable of light work. TR 36. Additionally, DeArmond's opinion that Simpson could only spend two hours per day on her feet and had to rest after walking 15 minutes mirror Simpson's own testimony regarding her limitations. By properly discounting Simpson's own testimony, the ALJ provided a germane reason for rejecting DeArmond's similar testimony. *Molina*, 674 F.3d at 1119 (a germane reason to discount lay witness testimony is "where the lay testimony is similar to other testimony that the ALJ validly discounted or where the testimony is contradicted by more reliable medical evidence that the ALJ credited.").

### 5. Simpson's Mental Impairments

The ALJ concluded that Simpson's mental impairments, considered singly and in combination, were not severe as they presented only minimal limitations on Simpson's ability to work. In making that determination, the ALJ noted that Simpson's mental limitations were well managed with prescription medications. Simpson admitted Effexor relieves her anxiety. TR 61. Additionally, the ALJ noted that despite claims of severe mental symptoms, Simpson only attended a few mental health counseling sessions before quitting. Although Simspon argued the problems stemmed from her counselor, when the agency assigned a new counselor to Simpson, Simpson did not maintain appointments with that counselor. TR 62. An ALJ may look to an unexplained failure to seek or follow a prescribed course of treatment in determining a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Finally, the ALJ pointed to the opinions of the state agency pyschologists, who concluded Simpson's mental impairments presented only mild functional limitations. The ALJ's conclusion that Simpson's mental impairments presented only minimal limitations on her ability to work is supported by substantial evidence in the record.

### 6. The ALJ's Determination that Simpson Could Perform Past Work

Relying on testimony from the VE, the ALJ concluded Simpson could perform past work as a fundraiser. Simpson's assignment of error at stage four relies on her above arguments. However, as described above, the ALJ's decision that Simpson could perform light work was supported by substantial evidence in the record and free of legal error. Therefore, the ALJ's decision is affirmed. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 18th day of December, 2015.

       /s/ Michael J. McShane       
Michael McShane
United States District Judge